UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| JAMES D. HAYNES, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 22-cv-04008-NKL |
| BETH JOHNSTON, *et al.*, | |
| Defendants. | |

**ORDER**

Defendant Beth Johnston moves to dismiss the complaint by plaintiff James D. Haynes. Doc. 4. For the reasons discussed below, the motion to dismiss is denied.

I. BACKGROUND

On December 27, 2017, Mr. Haynes, who is black, placed a take-out pizza order at an Imo's Pizza franchise in Camdenton. Defendants Johnston and Brannan, who are white, were working at Imo's when Mr. Haynes arrived at Imo's to pay for and collect the pizzas he had ordered.

Plaintiff paid for the order he had made, collected the pizzas that the employees gave him, and left. On his way home, Plaintiff discovered that the Imo's employees had failed to fulfill his order.[1] He called the restaurant and notified the employees that they had failed to fulfill his order and that he would return to the restaurant to collect the correct order. Mr. Haynes was told that

---

[1] On a motion to dismiss, the Court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 574–75 (8th Cir. 2021).

Ms. Johnston refused to prepare the correct order and refused to give him credit for the wrong order. Ms. Johnston said to Mr. Haynes, "That's what you people always do," meaning that black people always try to cheat Imo's out of pizza orders. Plaintiff nonetheless returned to the restaurant. Ms. Johnston and Mr. Brannan refused to prepare the correct order and refused to give him credit for the incorrect order they had given him.

Mr. Haynes alleges that Imo's employees, including Ms. Johnson and Mr. Brannan, always prepared correct orders for white people when advised of mistakes, and gave white people credit for incorrect orders. He alleges that the Imo's employees' conduct towards him was part of a pattern. Further, Mr. Brannan and other employees of Imo's "published and made available" to Mr. Haynes and other black people written statements regarding Mr. Haynes and other black people, describing them as "stupid niggers" and stating that if a floor blower used at the restaurant "was stronger I could blow these niggers right out the door."

Mr. Haynes brings two causes of action against Ms. Johnson: (1) a claim for interference with right to contract under 42 U.S.C. § 1981, and (2) a state law tort claim. Ms. Johnson moves for dismissal of both claims.

## II. STANDARD

The Federal Rules of Civil Procedure require the dismissal of a complaint that fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6).

In determining whether a complaint alleges sufficient facts to state a plausible claim to relief, the Court accepts all factual allegations as true. *See Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).

### III. DISCUSSION

#### A. Whether Mr. Haynes Has Stated a Claim for Interference with Right to Contract Under Section 1981

Mr. Haynes' first claim arises under Section 1981. In relevant part, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). In this context, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). This right to contract is "protected against impairment by nongovernmental discrimination . . . ."

To state a *prima facie* case of discrimination under Section 1981 in the retail context, a plaintiff must allege facts showing: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, and (3) interference by the defendant with an activity protected under the statute." *Green v. Dillard's, Inc.*, 483 F.3d 533, 538 (8th Cir. 2007).

Mr. Haynes' claim in essence is that Ms. Johnston denied him the right a white person would have had to make and enjoy the benefits, privileges, terms, and conditions of the contractual relationship with Imo's. On the present motion, Ms. Johnston does not dispute that the first and second elements have been adequately alleged. However, Ms. Johnston argues that Mr. Haynes has not alleged facts showing interference with the right to contract because the contractual transaction at issue was completed.

In support of her argument, Ms. Johnston cites *Youngblood v. Hy-Vee Food Stores, Inc.*, where the Eighth Circuit held that "once [a] purchase is completed, no contractual relationship remains." 266 F.3d 851, 854 (8th Cir. 2001). In *Youngblood*, after a black customer completed his purchase of beef jerky, the grocery store took the can away from him on suspicion that he had

crammed the contents of a second, unpurchased beef jerky can into the can he had purchased. The Eighth Circuit held that "the key is whether any contractual duty remained after Youngblood made his purchase." In that case, "[o]nce Youngblood paid the cashier and received the beef jerky from the cashier, neither party owed the other any duty under the retail-sale contract." Therefore, there was no contractual relationship when the grocery store took the can away from Youngblood.

The allegations in this case are different from those in *Youngblood*. Here, Mr. Haynes alleges that he did not receive the goods that he contracted for. Imo's promised him a certain pizza order, but gave him something other than what he had bargained for. Ms. Johnston then interfered with Mr. Haynes' rights under the contract by refusing to fulfill his order. Mr. Haynes thus has alleged interference with a protected activity under Section 1981. Ms. Johnston's motion to dismiss Count I must be denied.

### B. Whether Mr. Haynes Has Stated a Claim for Outrage

Mr. Haynes' second claim against Ms. Johnston is for outrage, also known as intentional infliction of emotional distress. *See Smith v. Standard Oil, Div. of Amoco Oil Co.*, 567 S.W.2d 412, 415 (Mo. App. 1978) (noting that "intentional infliction of emotional distress" is "commonly referred to as the tort of outrage"). "To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). A claim of intentional infliction of emotional distress must include allegations of facts "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 181–82 (Mo. banc 2019) (quotation marks and citation omitted).

Johnston argues that "there are not allegations that Defendant Johnston made any . . . statements at all to support a claim of intentional infliction of emotional distress." However, Mr. Haynes has alleged that Johnston, among others, called him a racial slur and denigrated him on the basis of race, and that he suffered damage to his reputation and humiliation as a result.[2]

"It is for the trial court to determine in the first instance whether the alleged wrongful conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *May v. Greater Kansas City Dental Soc.*, 863 S.W.2d 941, 948 (Mo. Ct. App. 1993). Given the history and import of the racial epithet allegedly directed at Mr. Haynes and the associated conduct, the Court cannot say as a matter of law that no reasonable factfinder could find the alleged conduct so outrageous as to be intolerable in a civilized community. *See Frye v. CBS Inc.*, 671 S.W.2d 316, 319 (Mo. Ct. App. 1984) ("[I]f in the favorable view of appellants' evidence, giving appellant all of the benefit of favorable inferences to be drawn therefrom, the question is reasonably debatable, then the issue should go to the jury." (citations omitted)). Ms. Johnston accordingly is not entitled to dismissal of Count II.

IV. CONCLUSION

For the reasons discussed above, Defendant Johnston's motion to dismiss Counts I and II, Doc. 4, is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: April 11, 2022
Jefferson City, Missouri

---

[2] Ms. Johnston argues repeatedly that the only factual allegation concerning her that could form the basis of a claim for intentional infliction of emotional distress is the allegation that she said ""that's what you people always do." However, Mr. Haynes also alleged that she called him a racial slur. *See* Doc. 1-2, ¶¶ 22, 31.